IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.                                                                              CASE NO. 4:03-cr-56-RH-AK

JOSEPH MICHAEL WYMAN,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc.202, Motion to Vacate, and Doc. 209, Amended Memorandum, by Joseph Michael Wyman.[1]  The Government has filed its response, Doc. 215, and Defendant has filed a reply.  Doc. 220.  This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

## BACKGROUND

Defendant Wyman and a co-defendant, Kathy Mills Lee, were indicted for three counts of mail fraud in violation of 18 U.S.C. §§ 1341 & 1342.  Doc. 68.  The financial scheme underlying the charges is set forth in *United States v. Lee*, 427 F.3d 881 (11th Cir. 2005), and will not be repeated here.  Both defendants were convicted on all counts.  Wyman was sentenced to 73 months imprisonment on each count, to run concurrently.  Doc. 152.

---

[1]This cause was administratively re-assigned to the undersigned on September 7, 2007.

He appealed his conviction and sentence, arguing insufficiency of the evidence, improper admission of evidence, and various errors associated with sentencing. The Eleventh Circuit affirmed in all respects except as to one sentencing error involving Lee only. *Lee*, 427 F.3d at 897.

The instant proceeding followed. On this occasion, Wyman raises the following issues: (1) that there was a "fatal variance" between the Government's theory of prosecution and the proof at trial; (2) that his trial was fundamentally unfair and he was denied equal protection and competent counsel; (3) that counsel was incompetent in failing to raise his right to equal protection and to object to the Government's selective prosecution of him; (4) that counsel was incompetent in failing to challenge the selection and impaneling of a biased jury, thereby denying Wyman the right to an impartial fact-finder; (5) that he was denied due process and equal protection by the criminalization of the act of mailing a notice to a bank to close an account; (6) that she was denied due process and equal protection by the criminalization of the act of following the Florida Rule of Civil Procedure regarding service of motions and pleading; (7) that he was denied due process, equal procedure, and a fair trial because the Government failed to prove an element of mail fraud, i.e., material misrepresentation; and (8) that counsel was incompetent in failing to recognize and object to a double jeopardy violation. Doc. 202.

**DISCUSSION**

1. "Fatal variance."

In this claim, Wyman charges that the Government's theory of prosecution was "that by passing 'bad checks' I had 'represent[ed] to the payees that there [was] money in the account to pay the checks,' and that those checks, per se, constituted a false statement of a material fact

amounting to fraud." Doc. 202 (citations omitted). However, at trial, the Government's witnesses "proved I either told the payees the issue check account was closed, reimbursed them as agreed when the check was returned, cancelled the underlying intended sales transaction, or entered into a novation via an exchange voucher." *Id.*

This claim is not cognizable in this proceeding. When the appellate court has reviewed a case on the merits, as it has done here, and held that there was sufficient evidence to support the jury's verdict, as it has also done here, then "any possibility of fatal variance...has already been settled by the usual appellate process." *Greene v. United States*, 360 F.2d 585 (5th Cir. 1966); *see also United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (district court is not required to reconsider claims of error that were raised and disposed of on direct appeal), *cert. denied*, 531 U.S. 1131 (2001).

    2.    Unfair trial.

In this claim, Defendant charges (1) that his attorney failed to present the defense that his actions were taken in good faith and in reliance on "course material, forms, templates, and procedures" he had bought and (2) that his attorney failed to interview or present witnesses, including "authors and vendors, banking experts, or other witnesses," or other evidence, such as the Uniform Commercial Code or negotiable instruments or contract law, to refute the Government's case. Doc. 203.

Wyman took the stand in his own defense and denied that he had any fraudulent intent in writing the numerous checks on the closed accounts. The jury was allowed to assess his credibility and his defense of good faith, which it obviously rejected. Presenting additional evidence of Wyman's good faith or ignorance, particularly when at least one banker had warned

his co-defendant that in writing checks on a closed checking account, she was committing a fraudulent act, would not have altered the outcome of the trial.  Furthermore, while there are people who promote using bills of exchange as a means of eliminating debt, the Office of the Comptroller of the Currency has warned about "Bogus Sight Drafts/Bills of Exchange Drawn on the Treasury" and concluded that the "theory behind their use is bogus and incomprehensible." http://www.treasurydirect.gov/instit/statreg/fraud/fraud_bogussightdraft.htm.  Thus, counsel would have found it difficult to find anyone with recognized banking credentials to attest to the legality of Lee's actions.  Even if counsel had presented the suggested defense and witnesses, there is not a reasonable probability that the jury would have acquitted Wyman on the charges against him, as the evidence of guilt was overwhelming.

       3.      Selective prosecution.

Defendant's claim of selective prosecution is equally without merit.  "In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute."  *Wayte v. United States*, 470 U.S. 598, 607 (1985).  "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."  *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).  The prosecutor's discretion is not, however, unfettered, as it is subject to constitutional constraints, *Wayte*, 470 U.S. at 609, and thus, the decision to prosecute may not be based "upon an unjustifiable standard such as race, religion, or other arbitrary classification."  *Bordenkircher*, 434 U.S. at 364 (internal quotation and citation omitted).

Defendant can point to no "unjustifiable standard" underlying the Government's decision

to prosecute the instant federal offenses and not to prosecute the "author nor the instigator" of the materials which Wyman used as the basis for this scheme.  In his reply, Wyman attempts to inject race and vindictiveness as factors in the Government's decision to prosecute him, *see* Doc. 220 (arguing there is a "large number of <u>non-caucasian</u> persons" who write bad checks in Tallahassee but are not prosecuted for mail fraud and maintaining that the prosecuting attorney told co-defendant's counsel that she "'had no case'" and that the United States Attorney was a "'fascist'"), but such bald assertions are plainly insufficient to warrant an evidentiary hearing muchless relief on the merits.  Finally, the Court would point out that the United States has indeed prosecuted at least one "author" and "instigator."  *See, e.g., United States v. Buhtz*, Cause No. 1:05cr30047-PA (D. Or.) (convicted of conspiracy to defraud United States and passing fictitious instruments); *see also Bryant v. Washington Mutual Bank*, 524 F.Supp. 2d 753, 762-623 (W.D. Va. 2007) ("people frequently end up in prison for pursuing these sorts of schemes," and persons who attempt to pay debts with bills of exchange and other "questionable means" are "playing with fire").

   4.  Failure of counsel to challenge biased jury.

   In this ground, Wyman claims that counsel failed to object to the empaneling of a biased jury "composed of 68 % (8 out of 12) who were directly employed by the government or had a close family member employed by law enforcement or correctional services." Doc. 202.  In his view, this statistic alone demonstrates obvious bias in favor of the Government.  *Id*.

   "The spectre of bias or prejudice must become...tangible before it can overcome the general presumption in favor of jury impartiality."  *United States v. Delval*, 600 F.2d 1098, 1102 (5th Cir. 1979).  "[W]hen reviewing juror impartiality, this court has focused on whether (1) the

juror may be affected by matters not in evidence, and (2) the juror may presume guilt rather than innocence." *United States v. Dickerson*, 248 F.3d 1036, 1045 (11th Cir. 2001). The Court also examines whether a juror has exhibited actual bias, either expressly or by proof of specific facts showing such a close connection to the circumstances of the case that bias is presumed. *United States v. Trujillo*, 146 F.3d 838, 842-43(11th Cir. 1998). While there are instances where prejudice is presumed without a showing of bias, those instances are rare. *See Mayola v. State*, 623 F.2d 992, 996-97 (5th Cir. 1980) (discussing standards for presuming prejudice where there is adverse pretrial publicity).

In this case, Wyman seeks a presumption of bias merely because a majority of the persons seated on his jury had some connection to government or law enforcement, not because they otherwise had any connection whatsoever to the circumstances of his case. He cites no authority for such a presumption, and the Court can find none. Furthermore, Wyman does not point to any specific juror that counsel should have sought to exclude based on bias, and the Court will not comb the record to find attorney error rising to the level of ineffective assistance of counsel when the burden is on him to point to point to specific errors of counsel. This claim is without merit.

     5.    Criminalization of mailing notice to close account.

The court of appeals rejected this claim on appeal. *See Lee*, 427 F.3d at 888. It will not be reconsidered now.

     6.    Criminlization of serving pleadings in civil lawsuit.

This claim was likewise rejected on appeal and will not be further addressed here. *See id*. at 889.

7. Failure to prove material misrepresentation.

Finally, Lee claims that the Government failed to prove a material misrepresentation because it failed to prove the checks would not have been paid by the United States Treasury "since no payee or bank followed the instructions to present the checks or exchange vouchers to the Department of the Treasury to verify that they would not be honored." Doc. 203. Like the basis for the whole notion underlying this financial scheme, *see* http://www.treasurydirect.gov/instit/statreg/fraud/fraud_bogussightdraft.htm, this argument is nonsense. The whole scheme, in and of itself, was a material misrepresentation that there was money to cover the checks that the defendants were passing for goods and services when, in fact, the funds were either insufficient or non-existent. The victims did not have to chase their moneys down bogus paths in order to complete the material misrepresentations which the defendants had made to them and satisfy the elements of the fraud statute.

8. Double jeopardy.

In this claim, Wyman complains that his counsel was ineffective for failing to object to a double jeopardy violation which occurred when he was "subjected to the first criminal proceeding...then was subjected to a second criminal proceeding...resulting in my having to face the risk of trial and incarceration twice for the same offense." Doc. 202.

Presumably, Wyman is pointing to the detention hearing as a criminal proceeding to which jeopardy attached. He is in error in that regard. A detention hearing is not a hearing on the merits of the Government's case against a defendant but instead is a proceeding to determine whether there is any condition or combination of conditions which will assure the appearance of the defendant at trial and the safety of other persons and the community. 18 U.S.C. § 3142(f).

Jeopardy does not attach following a detention hearing, as it is not a trial on the merits, *see Serfass v. United States*, 420 U.S. 377, 388, 393 (1975) (jeopardy does not attach until defendant is put to trial before trier of facts; it is a "fundamental principle that an accused must suffer jeopardy before he can suffer double jeopardy"), and thus, counsel was not ineffective for failing to lodge a frivolous double jeopardy objection.

## CONCLUSION

Having carefully considered the matter, the Court finds no merit to any of Defendant's claims. Accordingly, it is respectfully **RECOMMENDED:**

That the motion to vacate, Doc. 202, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Gainesville, Florida, this *7th* day of August, 2008.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**